**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SLINGSHOT PRINTING LLC,<br><br>Plaintiff,<br>v.<br><br>CANON U.S.A., INC. and<br>CANON SOLUTIONS AMERICA, INC.<br><br>Defendants. | Civil Action No. 2:22-cv-00123<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff, Slingshot Printing LLC ("Slingshot"), complains against Defendants Canon U.S.A., Inc. and Canon Solutions America, Inc. (individually or collectively "Defendants" or "Canon") as follows:

**NATURE OF ACTION**

1. This is an action for patent infringement of United States Patent Nos. 7,152,951; 7,195,341; 7,559,629 and 7,938,523 (collectively, the "Patents in Suit") under the Patent Laws of the United States, 35 U.S.C. § 1, *et seq.*

**THE PARTIES**

2. Plaintiff Slingshot is a limited liability company organized and existing under the laws of the State of Delaware with its principal place of business at 10015 Old Columbia Road, Suite B215, Columbia, Maryland 21046. Slingshot is in the business of licensing patented technology. Slingshot is the assignee of the Patents in Suit.

3. Defendant Canon U.S.A., Inc. ("Canon U.S.A.") is a New York corporation with its principal place of business at One Canon Park, Melville, New York 11747. Canon U.S.A. is a subsidiary of Japanese corporation Canon, Inc. that is primarily responsible for marketing and

sales of Canon products in the United States, including through distributors and resellers. Canon U.S.A.'s registered agent for service of process in the State of New York is Corporation Service Company, 80 State Street, Albany, New York 12207–2543. Canon U.S.A. conducts business in and is doing business in New York and in this District, including, without limitation, using, promoting, offering to sell, importing, and/or selling inkjet printers, inkjet printheads, and/or ink cartridges that embody the patented technology in this District, as well as enabling end-user purchasers to use such devices in this District.

4. Defendant Canon Solutions America, Inc. ("CSA") is a New York corporation with a principal place of business at One Canon Park, Melville, New York 11747. CSA is a wholly owned subsidiary of Canon U.S.A. CSA's registered agent for service of process in the State of New York is Corporation Service Company, 80 State Street, Albany, New York 12207–2543. Defendant CSA conducts business in and is doing business in New York and in this District and elsewhere in the United States, including, without limitation, using, promoting, offering to sell, importing, and/or selling inkjet printers and/or inkjet printheads that embody the patented technology in this District, and enabling end-user purchasers to use such devices in this District.

## JURISDICTION AND VENUE

5. This action arises under the Patent Laws of the United States, Title 35 of the United States Code. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

6. Defendant Canon U.S.A. is subject to this Court's specific and general personal jurisdiction at least because it is incorporated under the laws of New York, has a headquarters located in this District, conducts business in New York and in this District, and has committed acts of infringement within this District, including, without limitation, using, promoting, offering to

sell, importing, and/or selling inkjet printers, printheads and/or ink cartridges that embody the patented technology in this District, as well as inducing infringement in this District.

7. Defendant CSA is subject to this Court's specific and general personal jurisdiction at least because it is incorporated under the laws of New York, has a headquarters located in this District, conducts business in New York and in this District, and has committed acts of infringement within this District, including, without limitation, using, promoting, offering to sell, importing, and/or selling inkjet printers and/or ink cartridges that embody the patented technology in this District, as well as inducing infringement in this District.

8. Venue lies in this District under 28 U.S.C. §§ 1391 and 1400(b) because Defendants reside in this District, have regularly conducted business in this District, and/or have committed acts of infringement in this District.

## BACKGROUND

9. The Patents in Suit relate to inkjet printer technology. Inkjet printers accomplish printing by ejecting ink from a micro-fluid ejection device such as an ink jet printhead. The printhead generally includes a semiconductor substrate having attached nozzles and corresponding ink ejection actuators. Ink is ejected from the nozzles onto a print medium, such as paper. Ink tanks or cartridges store ink and provide ink to the printhead during printing.

10. Three of the four Patents in Suit cover technologies relating to printheads for inkjet printers or components thereof. In particular, U.S. Patent No. 7,152,951, U.S. Patent No. 7,195,341 and U.S. Patent No. 7,559,629 relate to printhead configurations that are optimized to reduce cost, improve performance, enhance printing resolution, and/or provide other benefits. U.S. Patent No. 7,938,523 relates to ink cartridges designed with venting elements to extend product longevity, minimize leaks, improve operation of inkjet printheads, and/or provide other benefits.

11. The Patents in Suit were originally assigned to Lexmark International, Inc. (hereinafter "Lexmark"), and were the result of Lexmark's many years of researching, designing, and developing innovative and proprietary inkjet printing technologies.

12. Lexmark was formed in 1991 when IBM divested a number of its hardware manufacturing operations. Lexmark became a leading developer, manufacturer and supplier of inkjet printers, ink cartridges, and their associated supplies and services.

13. Recognizing the value of Lexmark's intellectual property, Funai Electric Co., Ltd (hereinafter "Funai") acquired Lexmark's inkjet printing technology intellectual property and related assets, including the Patents in Suit.

14. Funai subsequently assigned to Slingshot all rights, title, and interest in the Patents in Suit.

**THE PATENTS IN SUIT**

15. On December 26, 2006, U.S. Patent No. 7,152,951 ("the '951 patent"), entitled "High Resolution Ink Jet Printhead," a copy of which is attached hereto as Exhibit A, was duly and legally issued. The '951 patent issued from U.S. patent application Serial Number 10/775,874 filed February 10, 2004 and discloses and relates to a printhead for an inkjet printer. The inventors assigned all right, title, and interest in the '951 patent to Lexmark. Lexmark assigned its entire right, title, and interest in the '951 patent to Funai. Funai assigned its entire right, title, and interest in the '951 patent to Slingshot. Slingshot is the sole owner of all rights, title, and interest in the '951 patent and, at a minimum, of all substantial rights in the '951 patent, including the exclusive right to enforce the patent and all rights to pursue damages, injunctive relief, and all other available remedies for past, current, and future infringement thereof.

16. On March 27, 2007, U.S. Patent No. 7,195,341 ("the '341 patent"), entitled "Power And Ground Buss Layout For Reduced Substrate Size," a copy of which is attached hereto as Exhibit B, was duly and legally issued. The '341 patent issued from U.S. patent application Serial Number 10/956,939 filed September 30, 2004 and discloses and relates to a micro-fluid ejection device for an inkjet printer. The inventors assigned all right, title, and interest in the '341 patent to Lexmark. Lexmark assigned its entire right, title, and interest in the '341 patent to Funai. Funai assigned its entire right, title, and interest in the '341 patent to Slingshot. Slingshot is the sole owner of all rights, title and interest in the '341 patent and, at a minimum, of all substantial rights in the '341 patent, including the exclusive right to enforce the patent and all rights to pursue damages, injunctive relief, and all other available remedies for past, current, and future infringement thereof.

17. On July 14, 2009, U.S. Patent No. 7,559,629 ("the '629 patent"), entitled "Methods And Apparatuses For Implementing Multi-Via Heater Chips," a copy of which is attached hereto as Exhibit C, was duly and legally issued. The '629 patent issued from U.S. patent application Serial Number 11/238,559 filed September 29, 2005 and discloses and relates to a heater chip for use in a printing device. The inventor assigned all right, title, and interest in the '629 patent to Lexmark. Lexmark assigned its entire right, title, and interest in the '629 patent to Funai. Funai assigned its entire right, title, and interest in the '629 patent to Slingshot. Slingshot is the sole owner of all rights, title, and interest in the '629 patent and, at a minimum, of all substantial rights in the '629 patent, including the exclusive right to enforce the patent and all rights to pursue damages, injunctive relief, and all other available remedies for past, current, and future infringement thereof.

18. On May 10, 2011, U.S. Patent No. 7,938,523 ("the '523 patent"), entitled "Fluid Supply Tank Ventilation For A Micro-Fluid Ejection Head," a copy of which is attached hereto as Exhibit D, was duly and legally issued. The '523 patent issued from U.S. patent application Serial Number 11/762,101 filed June 13, 2007 and discloses and relates to a fluid supply tank for a micro-fluid ejection head. The inventor assigned all right, title, and interest in the '523 patent to Lexmark. Lexmark assigned its entire right, title, and interest in the '523 patent to Funai. Funai assigned its entire right, title, and interest in the '523 patent to Slingshot. Slingshot is the sole owner of all rights, title, and interest in the '523 patent and, at a minimum, of all substantial rights in the '523 patent, including the exclusive right to enforce the patent and all rights to pursue damages, injunctive relief, and all other available remedies for past, current, and future infringement thereof.

**DEFENDANTS' INFRINGING PRODUCTS**

19. Defendant Canon U.S.A. makes, uses, sells, offers for sale, and/or imports into the United States a variety of inkjet printers. These inkjet printers include, among others, the Maxify line of printers for small and home office printing, the Pixma line of multifunction printers, and the imagePROGRAF line of business and professional printers. Canon U.S.A. actively markets and supports sales of Maxify, Pixma, and imagePROGRAF printers through its website (www.usa.canon.com) and other means, and sells these printers to retailers, distributors, and/or other resellers. Certain of the imagePROGRAF models are offered for sale and available for purchase directly through Canon U.S.A.'s website.

20. Canon U.S.A. also makes, uses, sells, offers for sale, and/or imports into the United States ink cartridges designed for use and compatible with its inkjet printers. Ink cartridges are necessary for the operation of the inkjet printers and vice versa. Canon U.S.A.'s inkjet printers are typically sold with a set of compatible ink cartridges. Canon U.S.A. also makes, uses, sells, offers

for sale, and/or imports into the United States replacement ink cartridges for its various inkjet printers.

21. Some inkjet printers sold by Canon U.S.A. utilize ink cartridges that include an integrated printhead. With respect to other inkjet printers, the printhead is integrated into the printer separate from the ink cartridges. In some models, each printhead is located on a carriage within the inkjet printer that support an ink tank mounted in alignment with the printhead.

22. Defendant CSA makes, uses, sells, offers for sale, imports into the United States, and/or services large format inkjet printers and/or printheads for large format printers. These large format printers include, among others, the imagePROGRAF line of printers for business and professional printing. CSA's website (csa.canon.com) allows potential customers to request a quote for specific imagePROGRAF printers.

## FIRST CAUSE OF ACTION – INFRINGEMENT OF THE '951 PATENT

23. Plaintiff hereby repeats and re-alleges the allegations contained in paragraphs 1 to 22, as if fully set forth herein.

### Defendant Canon U.S.A.'s Infringement

24. Defendant Canon U.S.A., directly and/or through its subsidiaries, affiliates, agents, and/or business partners, has in the past and continues to directly infringe the '951 patent pursuant to 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, by making, having made, using, selling, offering to sell, and/or importing inkjet printers, ink cartridges, and/or printheads that embody the inventions claimed in the '951 patent, in particular, at least claims 1–7, and 10, within the United States and within this District. Canon U.S.A. has been and is engaged in one or more of these direct infringing activities related to its inkjet printers, ink cartridges, and/or

printheads, including at least: (i) Maxify GX6020, Maxify GX7020, Maxify iB4020, Maxify iB4120, Maxify MB2020, Maxify MB2120, Maxify MB2320, Maxify MB2720, Maxify MB5020, Maxify MB5120, Maxify MB5320, Maxify MB5420, Pixma G1220, Pixma G2260, Pixma G3260, Pixma G4210, Pixma G6020, Pixma G7020, Pixma MG2120, Pixma MG2220, Pixma MG2420, Pixma MG2522, Pixma MG2525, Pixma MG2920, Pixma MG2922, Pixma MG2924, Pixma MG3020, Pixma MG3022, Pixma MG3120, Pixma MG3122, Pixma MG3220, Pixma MG3222, Pixma MG3520, Pixma MG3522, Pixma MG3620, Pixma MG4120, Pixma MG4220, Pixma MX320, Pixma MX330, Pixma MX340, Pixma MX350, Pixma MX360, Pixma MX372, Pixma MX392, Pixma MX410, Pixma MX420, Pixma MX432, Pixma MX439, Pixma MX452, Pixma MX459, Pixma MX472, Pixma MX479, Pixma MX490, Pixma MX492, Pixma MX512, Pixma MX522, Pixma MX532, Pixma TR4520, Pixma TR4522, Pixma TR7020, Pixma TR7022, Pixma TS202, Pixma TS302, Pixma TS3120, Pixma TS3122, Pixma TS3320, Pixma TS3322, Pixma TS5120, Pixma TS5320, Pixma TS6420, Pixma iP100, Pixma iP110, Pixma iP2700, Pixma iP2702, and Pixma iP2820 inkjet printers; (ii) CL-211, CL-211XL, CL-241, CLI-241XL, CL-244, CL-244XL, CL-246, CL-246XL, CL-261, CL-261XL, PG-210, PG-210XL, PG-240, PG-240XL, PG-243, PG-243XL, PG-245, PG-245XL, PG-260, and PG-260XL ink cartridges and Maxify and/or Pixma printers utilizing such cartridges; (iii) inkjet printers and/or ink cartridges utilizing one or more printheads containing a die with part number LQ4220, LQ4300, LQ4490-H, LQ400A, LQ400A-23, LQ4540, LQ4540A, LQ4550, LQ4550A, LQ4590, LQ4620, LQ4640, LQ4750, LQ4760, LQ4770, LQ4770-12-F2, LQ4780, or LQ4780-13; (iv) PF-10 printheads and inkjet printers utilizing PF-10 printheads, including imagePROGRAF PRO-1000, PRO-2000, PRO-2100, PRO-4000, PRO-4000S, PRO-4100, PRO-4100S, PRO-6000, PRO-6000S, PRO-6100, and PRO-6100S large format inkjet printers; and (v) any other printhead (or product containing a

printhead) having a semiconductor substrate containing a column of heater resistors spaced substantially the same distance from an edge of an ink feed slot and wherein the heater resistors in the column have an aspect ratio ranging from about 1.5:1 to about 6:1, a thick film layer attached to the substrate and forming ink feed chambers and channels for the heater resistors, and a nozzle plate attached to the thick film layer and containing nozzle holes spaced apart with a pitch of from about 600 to about 2400 dpi (collectively hereinafter "the '951 CUSA Accused Products").

25. Canon U.S.A. sells the '951 CUSA Accused Products to distributors, retailers and/or other customers throughout the United States, and actively markets and supports sales, including through its website. In some instances, '951 CUSA Accused Products are available for sale directly through Canon U.S.A.'s website.

26. Notice of the factual basis of Plaintiff's allegations of infringement by the '951 CUSA Accused Products is provided in the claim charts attached as Exhibit E and Exhibit F. Exhibit E demonstrates how the '951 patent is infringed by reference to the Maxify GX6020, Maxify GX7020, Maxify iB4120, Maxify MB2720, Pixma G3260, Pixma G4210, and Pixma iP110 inkjet printers, as well as CL-211, CL-241, CL-244, PG-260, and CL-261 cartridges, which, on information and belief, are representative of the infringing aspects of at least the Maxify and Pixma inkjet printers and replacement cartridges identified in Paragraph 24. Exhibit F demonstrates how the '951 patent is infringed by reference to the PF-10 printhead, which, on information and belief, is representative of the infringing aspects of at least the imagePROGRAF inkjet printers identified in Paragraph 24.

27. Canon U.S.A., directly and/or through its subsidiaries, affiliates, agents, and/or business partners, is indirectly infringing the '951 patent, including at least claims 1–7 and 10, pursuant to 35 U.S.C. § 271(b) by actively inducing acts of direct infringement performed by

others. Canon U.S.A.'s customers directly infringe at least by using the '951 CUSA Accused Products. Canon U.S.A.'s retail partners, distributors, and resellers directly infringe at least by selling and offering for sale such products.

28. Canon U.S.A. has actual notice of the '951 patent and the infringement alleged herein at least upon the service of this Complaint. On information and belief, Canon U.S.A. also has lawyers and other active agents who regularly review patents and published patent applications relevant to the technology in the field of the '951 patent. The timing, circumstances, and extent of Canon U.S.A. obtaining actual knowledge of the '951 patent prior to commencement of this lawsuit will be confirmed during discovery.

29. Canon U.S.A. indirectly infringes the '951 patent by inducing third parties, including customers, to use the '951 CUSA Accused Products in their normal and customary way and for their intended purpose. On information and belief, Canon U.S.A. also induces its authorized distributors and resellers to engage in infringing acts of selling and offering for sale the '951 CUSA Accused Products. For example, Canon U.S.A. actively induces such third parties, including customers, distributors, and resellers, to infringe the '951 patent by, among other things: (i) offering for sale, selling, or otherwise providing the '951 CUSA Accused Products and components thereof to such third parties; (ii) enabling third parties to assemble, install, and use the products when such use infringes the '951 patent; (iii) providing technical support, specifications, user guides, manuals, technical information, and instructions for assembling, installing, and operating the '951 CUSA Accused Products in their customary way; (iv) advertising and promoting the '951 CUSA Accused Products, including assisting purchasers in locating local dealers for specific inkjet printer models, through its website and various promotional materials;

and/or (v) providing ongoing warranties, support, maintenance, and registration to such third parties relating to the ’951 CUSA Accused Products.

30. Upon information and belief, Canon U.S.A. has known that its customers, distributors, and resellers have followed and/or used Canon U.S.A.’s support, instructions, user guides, and technical specifications and have used, offered to sell, or sold the ’951 CUSA Accused Products within the United States. Canon U.S.A. directly benefits from and actively and knowingly encourages customers’, distributors’ and resellers’ use, sale, and/or offer for sale of the ’951 CUSA Accused Products in the United States.

31. Upon gaining knowledge of the ’951 patent, it became apparent to Canon U.S.A. that the manufacture, sale, importing, offer for sale, or use of the ’951 CUSA Accused Products infringes the ’951 patent. On information and belief, Canon U.S.A. will continue to engage in activities constituting inducement of infringement, and with the actual intent to cause the acts that it knows or should know would induce direct infringement and/or willful blindness of a high probability that the activities result in infringement of the ’951 patent.

32. Canon U.S.A.’s direct infringement and/or inducement to infringe the ’951 patent has injured and will continue to injure Slingshot. Slingshot is entitled to recover damages adequate to compensate for such infringement pursuant to 35 U.S.C. § 284.

**Defendant CSA’s Infringement**

33. Defendant CSA directly and/or through its subsidiaries, affiliates, agents, and/or business partners, has in the past and continues to directly infringe the ’951 patent pursuant to 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, by making, having made, using, selling, offering to sell, and/or importing inkjet printers and/or printheads that embody the inventions claimed in the ’951 patent, in particular, at least claims 1–2 and 5–7, within the United

States and within this District. CSA has been and is engaged in one or more of these direct infringing activities related to at least: (i) PF-10 printheads and inkjet printers utilizing PF-10 printheads, including imagePROGRAF PRO-1000, PRO-2000, PRO-2100, PRO-4000, PRO-4000S, PRO-4100, PRO-4100S, PRO-6000, PRO-6000S, PRO-6100, and PRO-6100S large format inkjet printers; and (ii) any other printhead (or product containing a printhead) having a semiconductor substrate containing a column of heater resistors spaced substantially the same distance from an edge of an ink feed slot and wherein the heater resistors in the column have an aspect ratio ranging from about 1.5:1 to about 6:1, a thick film layer attached to the substrate and forming ink feed chambers and channels for the heater resistors, and a nozzle plate attached to the thick film layer and containing nozzle holes spaced apart with a pitch of from about 600 to about 2400 dpi (collectively hereinafter "the '951 CSA Accused Products").

34. CSA sells the '951 CSA Accused Products to distributors, retailers, and/or other customers throughout the United States, and actively markets and supports sales, including through its website. In some instances, CSA's parent company, Canon U.S.A., identifies CSA as a dealer for the '951 CSA Accused Products.

35. Notice of the factual basis of Plaintiff's allegations of infringement by the '951 CSA Accused Products is provided in the claim chart attached as Exhibit F. Exhibit F demonstrates how the '951 patent is infringed by reference to the PF-10 printhead, which, on information and belief, is representative of the infringing aspects of at least the imagePROGRAF inkjet printers identified in Paragraph 33.

36. CSA, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, is also indirectly infringing the '951 patent, including at least claims 1–2 and 5–7 pursuant to 35 U.S.C. § 271(b) by actively inducing acts of direct infringement performed by others. CSA's

customers directly infringe at least by using the ’951 CSA Accused Products. CSA’s distributors and resellers directly infringe at least by selling and offering for sale such products.

37. CSA has actual notice of the ’951 patent and the infringement alleged herein at least upon the service of this Complaint. On information and belief, CSA also has lawyers and other active agents who regularly review patents and published patent applications relevant to the technology in the field of the ’951 patent. The timing, circumstances, and extent of CSA obtaining actual knowledge of the ’951 patent prior to commencement of this lawsuit will be confirmed during discovery.

38. CSA indirectly infringes the ’951 patent by inducing third parties, including customers, to use the ’951 CSA Accused Products in their normal and customary way and for their intended purpose. On information and belief, CSA also induces its authorized distributors and resellers to engage in infringing acts of selling and offering for sale the ’951 CSA Accused Products. For example, CSA actively induces such third parties, including customers, distributors, and resellers, to infringe the ’951 patent by, among other things: (i) offering for sale, selling, or otherwise providing the ’951 CSA Accused Products and components thereof to such third parties; (ii) enabling third parties to assemble, install, and use the products when such use infringes the ’951 patent; (iii) providing technical support, specifications, user guides, manuals, technical information, and instructions for assembling, installing, and operating the ’951 CSA Accused Products in their customary way; (iv) advertising and promoting the ’951 CSA Accused Products through its website and various promotional materials; and/or (v) providing ongoing warranties, support, maintenance, and registration to such third parties relating to the ’951 CSA Accused Products.

39. Upon information and belief, CSA has known that its customers, distributors, and resellers have followed and/or used CSA's support, instructions, user guides, and technical specifications and have used, offered to sell, or sold the '951 CSA Accused Products within the United States. CSA directly benefits from and actively and knowingly encourages customers', distributors', and resellers' use, sale, and/or offer for sale of the '951 CSA Accused Products in the United States.

40. Upon gaining knowledge of the '951 patent, it became apparent to CSA that the manufacture, sale, importing, offer for sale, or use of the '951 CSA Accused Products infringes the '951 patent. On information and belief, CSA will continue to engage in activities constituting inducement of infringement, and with the actual intent to cause the acts that it knows or should know would induce direct infringement and/or willful blindness of a high probability that the activities result in infringement of the '951 patent.

41. CSA's direct infringement and/or inducement to infringe the '951 patent has injured and will continue to injure Slingshot. Slingshot is entitled to recover damages adequate to compensate for such infringement pursuant to 35 U.S.C. § 284.

**SECOND CAUSE OF ACTION – INFRINGEMENT OF THE '341 PATENT**

42. Plaintiff hereby repeats and re-alleges the allegations contained in paragraphs 1 to 22, as if fully set forth herein.

**Defendant Canon U.S.A.'s Infringement**

43. Defendant Canon U.S.A., directly and/or through its subsidiaries, affiliates, agents, and/or business partners, has in the past and continues to directly infringe the '341 patent pursuant to 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, by making, having made, using, selling, offering to sell, and/or importing inkjet printers, ink cartridges, and/or printheads

that embody the inventions claimed in the ’341 patent, in particular, at least claims 1–5 and 8, within the United States and within this District. Canon U.S.A. has been and is engaged in one or more of these direct infringing activities related to its inkjet printers, ink cartridges, and/or printheads, including at least: (i) Maxify GX6020, Maxify GX7020, Maxify iB4020, Maxify iB4120, Maxify iX6820, Maxify MB2020, Maxify MB2120, Maxify MB2320, Maxify MB2720, Maxify MB5020, Maxify MB5120, Maxify MB5320, Maxify MB5420, Pixma Pro-200, Pixma G1200, Pixma G1220, Pixma G2200, Pixma G2260, Pixma G3200, Pixma G3202, Pixma G3260, Pixma G4210, Pixma G5020, Pixma G6020, Pixma G7020, Pixma MG2120, Pixma MG2220, Pixma MG2420, Pixma MG2522, Pixma MG2525, Pixma MG2920, Pixma MG2922, Pixma MG2924, Pixma MG3020, Pixma MG3022, Pixma MG3120, Pixma MG3122, Pixma MG3220, Pixma MG3222, Pixma MG3520, Pixma MG3522, Pixma MG3620, Pixma MG4120, Pixma MG4220, Pixma MX320, Pixma MX330, Pixma MX340, Pixma MX350, Pixma MX360, Pixma MX372, Pixma MX392, Pixma MX410, Pixma MX420, Pixma MX432, Pixma MX439, Pixma MX452, Pixma MX459, Pixma MX472, Pixma MX479, Pixma MX490, Pixma MX492, Pixma MX512, Pixma MX522, Pixma MX532, Pixma TR4520, Pixma TR4522, Pixma TR7020, Pixma TR7022, Pixma TS202, Pixma TS302, Pixma TS3120, Pixma TS3122, Pixma TS3320, Pixma TS3322, Pixma TS5120, Pixma TS5320, Pixma TS6420, Pixma TS8020, Pixma TS8120, Pixma TS8220, Pixma TS8320, Pixma TS8322, Pixma TS9020, Pixma TS9120, Pixma iP100, Pixma iP110, Pixma iP2700, Pixma iP2702, and Pixma iP2820 inkjet printers; (ii) CL-211, CL-211XL, CL-241, CL-241XL, CL-244, CL-244XL, CL-246, CL-246XL, CL-261, CL-261XL, PG-210, PG-210XL, PG-240, PG-240XL, PG-243, PG-243XL, PG-245, PG-245XL, PG-260, and PG-260XL ink cartridges and Maxify and/or Pixma printers utilizing such cartridges; (iii) inkjet printers and/or ink cartridges utilizing one or more printheads containing a die with part number KF6-4694,

LQ400A, LQ400A-23, LQ4220, LQ4290, LQ4300, LQ4350, LQ4390, LQ4400, LQ4460, LQ4490, LQ4490-H, LQ4540, LQ4550, LQ4550A, LQ4590, LQ4630, LQ4640, LQ4650, LQ4670, LQ4750, LQ4760, LQ4770, LQ4780, LQ4780-13, LQ4490, or LQ4770-12-F2; (iv) PF-06 and PF-10 printheads and inkjet printers utilizing PF-06 or PF-10 printheads, including imagePROGRAF PRO-1000, PRO-2000, PRO-2100, PRO-4000, PRO-4000S, PRO-4100, PRO-4100S, PRO-6000, PRO-6000S, PRO-6100, PRO-6100S, TA-20, TA-30, TM200, TM300, TM305, TX3000, TX4000, TX4100, and TZ-30000 large format inkjet printers; and (v) any other printhead (or product containing a printhead) including a column of power transistors connected to an adjacent column of corresponding ejection actuators through a first metal conductive layer and to an adjacent column of corresponding logic transistors through a polysilicon conductor layer, wherein at least one power conductor for the ejection actuators is in a second metal layer and overlaps at least some power transistors, and at least one ground conductor connected to the ejection actuators is in the second metal layer and overlaps at least some logic transistors (collectively hereinafter "the '341 CUSA Accused Products").

44. Canon U.S.A. sells the '341 CUSA Accused Products to distributors, retailers and/or other customers throughout the United States, and actively markets and supports sales, including through its website. In some instances, the '341 CUSA Accused Products are available for sale directly through Canon U.S.A.'s website.

45. Notice of the factual basis of Plaintiff's allegations of infringement by the '341 CUSA Accused Products is provided in the claim charts attached as Exhibit G and Exhibit H. Exhibit G demonstrates how the '341 patent is infringed by reference to the Maxify MB2720, Maxify GX6020, Maxify GX7020, Maxify iB4120, Maxify iX6820, Pixma Pro-200, Pixma TR7020, and Pixma TS6420 using cartridges PG-260 and CL-261; Pixma MG2525 and TR4520

using cartridges PG-243 or 245 and CL-244 or 246; Pixma G3260, Pixma G4210, and Pixma TS8220 ink jet printers, as well as cartridges PG-210 CL-211, PG-240, and CLI-241 (LQ4300), which, on information and belief, are representative of the infringing aspects of at least the Maxify and Pixma inkjet printers and replacement cartridges identified in Paragraph 43. Exhibit H demonstrates how the ’341 patent is infringed by reference to the PF-06 and PF-10 printheads, which, on information and belief, are representative of the infringing aspects of at least the imagePROGRAF inkjet printers identified in Paragraph 43.

46. Canon U.S.A., directly and/or through its subsidiaries, affiliates, agents, and/or business partners, is also indirectly infringing the ’341 patent, including at least claims 1–5 and 8, pursuant to 35 U.S.C. § 271(b) by actively inducing acts of direct infringement performed by others. Canon U.S.A.’s customers directly infringe at least by using the ’341 CUSA Accused Products. Canon U.S.A.’s retail partners, distributors, and resellers directly infringe at least by selling and offering for sale such products.

47. Canon U.S.A. has actual notice of the ’341 patent and the infringement alleged herein at least upon the service of this Complaint. On information and belief, Canon U.S.A. also has lawyers and other active agents who regularly review patents and published patent applications relevant to the technology in the field of the ’341 patent. The timing, circumstances, and extent of Canon U.S.A. obtaining actual knowledge of the ’341 patent prior to commencement of this lawsuit will be confirmed during discovery.

48. Canon U.S.A. indirectly infringes the ’341 patent by inducing third parties, including customers, to use the ’341 CUSA Accused Products in their normal and customary way and for their intended purpose. On information and belief, Canon U.S.A. also induces its authorized distributors and resellers to engage in infringing acts of selling and offering for sale the

’341 CUSA Accused Products. For example, Canon U.S.A. actively induces such third parties, including customers, distributors, and resellers, to infringe the ’341 patent by, among other things: (i) offering for sale, selling, or otherwise providing the ’341 CUSA Accused Products and components thereof to such third parties; (ii) enabling third parties to assemble, install, and use the products when such use infringes the ’341 patent; (iii) providing technical support, specifications, user guides, manuals, technical information, and instructions for assembling, installing, and operating the ’341 CUSA Accused Products in their customary way; (iv) advertising and promoting the ’341 CUSA Accused Products, including assisting purchasers in locating local dealers for specific inkjet printer models, through its website and various promotional materials; and/or (v) providing ongoing warranties, support, maintenance, and registration to such third parties relating to the ’341 CUSA Accused Products.

49. Upon information and belief, Canon U.S.A. has known that its customers, distributors, and resellers have followed and/or used Canon U.S.A.’s support, instructions, user guides, and technical specifications and have used, offered to sell, or sold the ’341 CUSA Accused Products within the United States. Canon U.S.A. directly benefits from and actively and knowingly encourages customers’, distributors’, and resellers’ use, sale, and/or offer for sale of the ’341 CUSA Accused Products in the United States.

50. Upon gaining knowledge of the ’341 patent, it became apparent to Canon U.S.A. that the manufacture, sale, importing, offer for sale, or use of the ‘341 CUSA Accused Products infringes the ’341 patent. On information and belief, Canon U.S.A. will continue to engage in activities constituting inducement of infringement, and with the actual intent to cause the acts that it knows or should know would induce direct infringement and/or willful blindness of a high probability that the activities result in infringement of the ’341 patent.

51. Canon U.S.A.'s direct infringement and/or inducement to infringe the '341 patent has injured and will continue to injure Slingshot. Slingshot is entitled to recover damages adequate to compensate for such infringement pursuant to 35 U.S.C. § 284.

**Defendant CSA's Infringement**

52. Defendant CSA directly and/or through its subsidiaries, affiliates, agents, and/or business partners, has in the past and continues to directly infringe the '341 patent pursuant to 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, by making, having made, using, selling, offering to sell, and/or importing inkjet printers and/or printheads that embody the inventions claimed in the '341 patent, in particular, at least claims 1–5 and 8, within the United States and within this District. CSA has been and is engaged in one or more of these direct infringing activities related to at least: (i) PF-06 or PF-10 printheads and inkjet printers utilizing PF-06 or PF-10 printheads, including imagePROGRAF PRO-1000, PRO-2000, PRO-2100; PRO-4000, PRO-4000S, PRO-4100, PRO-4100S, PRO-6000, PRO-6000S PRO-6100, PRO-6100S, TA-20, TA-30, TM200, TM300, TM305, TX3000, TX4000, TX4100, and TZ-30000 large format inkjet printers; and (ii) any other printhead (or product containing a printhead) including a column of power transistors connected to an adjacent column of corresponding ejection actuators through a first metal conductive layer and to an adjacent column of corresponding logic transistors through a polysilicon conductor layer, wherein at least one power conductor for the ejection actuators is in a second metal layer and overlaps at least some power transistors, and at least one ground conductor connected to the ejection actuators is in the second metal layer and overlaps at least some logic transistors (collectively hereinafter "the '341 CSA Accused Products").

53. CSA sells the '341 CSA Accused Products to distributors, retailers and/or other customers throughout the United States, and actively markets and supports sales, including through

its website. In some instances, CSA's parent company, Canon U.S.A., identifies CSA as a dealer for the '341 CSA Accused Products.

54. Notice of the factual basis of Plaintiff's allegations of infringement by the '341 CSA Accused Products is provided in the claim chart attached as Exhibit H. Exhibit H demonstrates how the '341 patent is infringed by reference to the PF-06 and PF-10 printheads, which, on information and belief, are representative of the infringing aspects of at least the imagePROGRAF inkjet printers identified in Paragraph 52.

55. CSA, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, is also indirectly infringing the '341 patent, including at least claims 1–5 and 8, pursuant to 35 U.S.C. § 271(b) by actively inducing acts of direct infringement performed by others. CSA's customers directly infringe at least by using the '341 CSA Accused Products. CSA's distributors and resellers directly infringe at least by selling and offering for sale such products.

56. CSA has actual notice of the '341 patent and the infringement alleged herein at least upon the service of this Complaint. On information and belief, CSA also has lawyers and other active agents who regularly review patents and published patent applications relevant to the technology in the field of the '341 patent. The timing, circumstances, and extent of CSA obtaining actual knowledge of the '341 patent prior to commencement of this lawsuit will be confirmed during discovery.

57. CSA indirectly infringes the '341 patent by inducing third parties, including customers, to use the '341 CSA Accused Products in their normal and customary way and for their intended purpose. On information and belief, CSA also induces its authorized distributors and resellers to engage in infringing acts of selling and offering for sale the '341 CSA Accused Products. For example, CSA actively induces such third parties, including customers, distributors,

and resellers, to infringe the ’341 patent by, among other things: (i) offering for sale, selling, or otherwise providing the ’341 CSA Accused Products and components thereof to such third parties; (ii) enabling third parties to assemble, install, and use the products when such use infringes the ’341 patent; (iii) providing technical support, specifications, user guides, manuals, technical information, and instructions for assembling, installing, and operating the ’341 CSA Accused Products in their customary way; (iv) advertising and promoting the ’341 CSA Accused Products through its website and various promotional materials; and/or (v) providing ongoing warranties, support, maintenance, and registration to such third parties relating to the ’341 CSA Accused Products.

58. Upon information and belief, CSA has known that its customers, distributors, and resellers have followed and/or used CSA’s support, instructions, user guides, and technical specifications and have used, offered to sell, or sold the ’341 CSA Accused Products within the United States. CSA directly benefits from and actively and knowingly encourages customers’, distributors’, and resellers’ use, sale, and/or offer for sale of products that infringe the ’341 patent in the United States.

59. Upon gaining knowledge of the ’341 patent, it became apparent to CSA that the manufacture, sale, importing, offer for sale, or use of the ’341 CSA Accused Products infringes the ’341 patent. On information and belief, CSA will continue to engage in activities constituting inducement of infringement, and with the actual intent to cause the acts that it knows or should know would induce direct infringement and/or willful blindness of a high probability that the activities result in infringement of the ’341 patent.

60. CSA's direct infringement and/or inducement to infringe the '341 patent has injured and will continue to injure Slingshot. Slingshot is entitled to recover damages adequate to compensate for such infringement pursuant to 35 U.S.C. § 284.

## THIRD CAUSE OF ACTION – INFRINGEMENT OF THE '629 PATENT

61. Plaintiff hereby repeats and re-alleges the allegations contained in paragraphs 1 to 22, as if fully set forth herein.

### Canon U.S.A.'s Infringement

62. Defendant Canon U.S.A., directly and/or through its subsidiaries, affiliates, agents, and/or business partners, has in the past and continues to directly infringe the '629 patent pursuant to 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, by making, having made, using, selling, offering to sell, and/or importing inkjet printers, ink cartridges, and/or printheads that embody the inventions claimed in the '629 patent, in particular, at least claims 1–3, 8, and 13, within the United States and within this District. Canon U.S.A. has been and is engaged in one or more of these direct infringing activities related to its ink jet printers, ink cartridges, and/or printheads, including at least: (i) Maxify GX6020, Maxify GX7020, Maxify iB4020, Maxify iB4120, Maxify iX6820, Maxify MB2020, Maxify MB2120, Maxify MB2320, Maxify MB2720, Maxify MB5020, Maxify MB5120, Maxify MB5320, Maxify MB5420, Pixma Pro-200, Pixma G1200, Pixma G1220, Pixma G2200, Pixma G2260, Pixma G3200, Pixma G3202, Pixma G3260, Pixma G4210, Pixma G5020, Pixma G6020, Pixma G7020, Pixma MG2120, Pixma MG2220, Pixma MG2420, Pixma MG2522, Pixma MG2525, Pixma MG2920, Pixma MG2922, Pixma MG2924, Pixma MG3020, Pixma MG3022, Pixma MG3120, Pixma MG3122, Pixma MG3220, Pixma MG3222, Pixma MG3520, Pixma MG3522, Pixma MG3620, Pixma MG4120, Pixma

MG4220, Pixma MX320, Pixma MX330, Pixma MX340, Pixma MX350, Pixma MX360, Pixma MX372, Pixma MX392, Pixma MX410, Pixma MX420, Pixma MX432, Pixma MX439, Pixma MX452, Pixma MX459, Pixma MX472, Pixma MX479, Pixma MX490, Pixma MX492, Pixma MX512, Pixma MX522, Pixma MX532, Pixma TR4520, Pixma TR4522, Pixma TR7020, Pixma TR7022, Pixma TS202, Pixma TS302, Pixma TS3120, Pixma TS3122, Pixma TS3320, Pixma TS3322, Pixma TS5120, Pixma TS5320, Pixma TS6420, Pixma TS8020, Pixma TS8120, Pixma TS8220, Pixma TS8320, Pixma TS8322, Pixma TS9020, Pixma TS9120, Pixma iP100, Pixma iP110, Pixma iP2700, Pixma iP2702, and Pixma iP2820 inkjet printers; (ii) CL-211, CL-211XL, CL-241, CL-241XL, CL-244, CL-244XL, CL-246, CL-246XL, CL-261, CL-261XL, PG-210, PG-240, PG-240XL, PG-243, PG-243-XL, PG-245, PG-245XL, PG-260, and PG-260XL ink cartridges and Maxify and/or Pixma printers utilizing such cartridges; (iii) inkjet printers and/or ink cartridges utilizing one or more printheads containing a die with part number LQ4220, LQ4300, LQ4350, LQ4390, LQ400A, LQ400A-23, LQ4550, LQ4550A, LQ4590, LQ4640, LQ4670, LQ4760, LQ4780, and LQ4780-13; (iv) PF-06 and PF-10 printheads and inkjet printers utilizing PF-06 or PF-10 printheads, including imagePROGRAF PRO-1000, PRO-2000, PRO-2100, PRO-4000, PRO-4000S, PRO-4100, PRO-4100S, PRO-6000, PRO-6000S PRO-6100, PRO-6100S, TA-20, TA-30, TM200, TM300, TM305, TX3000, TX4000, TX4100, and TZ-30000 large format inkjet printers; and (v) any other printhead (or product containing a printhead) having a first group of heater resistors along the right side of a first ink slot (via) and a second group of heater resistors along the left side of a second ink slot (via), and two staggered groups of logic cells arranged between and substantially parallel to the first and second groups of heater resistors, wherein one group of logic cells controls the first group of heater resistors and the other group of

logic cells controls the second group of heater resistors (collectively hereinafter "the '629 CUSA Accused Products").

63. Canon U.S.A. sells the '629 CUSA Accused Products to distributors, retailers and/or other customers throughout the United States, and actively markets and supports sales, including through its website. In some instances, '629 CUSA Accused Products are available for sale directly through Canon U.S.A.'s website.

64. Notice of the factual basis of Plaintiff's allegations of infringement by the '629 CUSA Accused Products is provided in the claim charts attached as Exhibit I and Exhibit J. Exhibit I demonstrates how the '629 patent is infringed by reference to the Maxify GX6020, Maxify GX7020, Maxify iB4120, Maxify MB2720, Maxify iX6820, Pixma Pro-200, Pixma G3260, Pixma G4210, Pixma iP110, and Pixma TS8220 inkjet printers, as well as cartridges CL-211, CLI-241, CL-244/246, and CL-261, which, on information and belief, are representative of the infringing aspects of at least the Maxify and Pixma inkjet printers and replacement cartridges identified in Paragraph 62. Exhibit J demonstrates how the '629 patent is infringed by reference to the PF-06 and PF-10 printheads, which, on information and belief, are representative of the infringing aspects of at least the imagePROGRAF inkjet printers identified in Paragraph 62.

65. Canon U.S.A., directly and/or through its subsidiaries, affiliates, agents, and/or business partners, is also indirectly infringing the '629 patent, including at least claims 1–3, 8, and 13, pursuant to 35 U.S.C. § 271(b) by actively inducing acts of direct infringement performed by others. Canon U.S.A.'s customers directly infringe at least by using the '629 CUSA Accused Products. Canon U.S.A.'s retail partners, distributors, and resellers directly infringe at least by selling and offering for sale such products.

66. Canon U.S.A. has actual notice of the ’629 patent and the infringement alleged herein at least upon the service of this Complaint. On information and belief, Canon U.S.A. also has lawyers and other active agents who regularly review patents and published patent applications relevant to the technology in the field of the ’629 patent. The timing, circumstances, and extent of Canon U.S.A. obtaining actual knowledge of the ’629 patent prior to commencement of this lawsuit will be confirmed during discovery.

67. Canon U.S.A. indirectly infringes the ’629 patent by inducing third parties, including customers, to use the ’629 CUSA Accused Products in their normal and customary way and for their intended purpose. On information and belief, Canon U.S.A. also induces its authorized distributors and resellers to engage in infringing acts of selling and offering for sale the ’629 CUSA Accused Products. For example, Canon U.S.A. actively induces such third parties, including customers, distributors, and resellers, to infringe the ’629 patent by, among other things: (i) offering for sale, selling, or otherwise providing the ’629 CUSA Accused Products and components thereof to such third parties; (ii) enabling third parties to assemble, install, and use the products when such use infringes the ’629 patent; (iii) providing technical support, specifications, user guides, manuals, technical information, and instructions for assembling, installing, and operating the ’629 CUSA Accused Products in their customary way; (iv) advertising and promoting the ’629 CUSA Accused Products, including assisting purchasers in locating local dealers for specific inkjet printer models, through its website and various promotional materials; and/or (v) providing ongoing warranties, support, maintenance, and registration to such third parties relating to the ’629 CUSA Accused Products.

68. Upon information and belief, Canon U.S.A. has known that its customers, distributors, and resellers have followed and/or used Canon U.S.A.’s support, instructions, user

guides, and technical specifications and have used, offered to sell, or sold the ’629 CUSA Accused Products within the United States. Canon U.S.A. directly benefits from and actively and knowingly encourages customers’, distributors’, and resellers’ use, sale, and/or offer for sale of the ’629 CUSA Accused Products in the United States.

69. Upon gaining knowledge of the ’629 patent, it became apparent to Canon U.S.A. that the manufacture, sale, importing, offer for sale, or use of the ’629 CUSA Accused Products infringes the ’629 patent. On information and belief, Canon U.S.A. will continue to engage in activities constituting inducement of infringement, and with the actual intent to cause the acts that it knows or should know would induce direct infringement and/or willful blindness of a high probability that the activities result in infringement of the ’629 patent.

70. Canon U.S.A.’s direct infringement and/or inducement to infringe the ’629 patent has injured and will continue to injure Slingshot. Slingshot is entitled to recover damages adequate to compensate for such infringement pursuant to 35 U.S.C. § 284.

**Defendant CSA’s Infringement**

71. Defendant CSA directly and/or through its subsidiaries, affiliates, agents, and/or business partners, has in the past and continues to directly infringe the ’629 patent pursuant to 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, by making, having made, using, selling, offering to sell, and/or importing inkjet printers and/or printheads that embody the inventions claimed in the ’629 patent, in particular, at least claims 1–3, 8, and 13, within the United States and within this District. CSA has been and is engaged in one or more of these direct infringing activities related to at least (i) PF-06 and PF-10 printheads and printers utilizing PF-06 or PF-10 printheads, including imagePROGRAF PRO-1000, PRO-2000, PRO-2100, PRO-4000, PRO-4000S, PRO-4100, PRO-4100S, PRO-6000, PRO-6000S, PRO-6100, PRO-6100S, TA-20,

TA-30, TM200, TM300, TM305, TX3000, TX4000, TX4100, and TZ-30000 large format inkjet printers; (ii) any other printhead (or product containing a printhead) having a first group of heater resistors along the right side of a first ink slot (via) and a second group of heater resistors along the left side of a second ink slot (via), and two staggered groups of logic cells arranged between and substantially parallel to the first and second groups of heater resistors, wherein one group of logic cells controls the first group of heater resistors and the other group of logic cells controls the second group of heater resistors (collectively hereinafter "the '629 CSA Accused Products").

72. CSA sells the '629 CSA Accused Products to distributors, retailers and/or other customers throughout the United States, and actively markets and supports sales, including through its website. In some instances, CSA's parent company, Canon U.S.A., identifies CSA as a dealer for the '629 CSA Accused Products.

73. Notice of the factual basis of Plaintiff's allegations of infringement by the '629 CSA Accused Products is provided in the claim chart attached as Exhibit J. Exhibit J demonstrates how the '629 patent is infringed by reference to the PF-06 and PF-10 printheads, which, on information and belief, are representative of the infringing aspects of at least the imagePROGRAF inkjet printers identified in Paragraph 71.

74. CSA, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, is also indirectly infringing the '629 patent, including at least claims 1–3, 8, and 13, pursuant to 35 U.S.C. § 271(b) by actively inducing acts of direct infringement performed by others. CSA's customers directly infringe at least by using the '629 CSA Accused Products. CSA's distributors and resellers directly infringe at least by selling and offering for sale such products.

75. CSA has actual notice of the '629 patent and the infringement alleged herein at least upon the service of this Complaint. On information and belief, CSA also has lawyers and other

active agents who regularly review patents and published patent applications relevant to the technology in the field of the ’629 patent. The timing, circumstances, and extent of CSA obtaining actual knowledge of the ’629 patent prior to commencement of this lawsuit will be confirmed during discovery.

76. CSA indirectly infringes the ’629 patent by inducing third parties, including customers, to use the ’629 CSA Accused Products in their normal and customary way and for their intended purpose. On information and belief, CSA also induces its authorized distributors and resellers to engage in infringing acts of selling and offering for sale the ’629 CSA Accused Products. For example, CSA actively induces such third parties, including customers, distributors, and resellers, to infringe the ’629 patent by, among other things: (i) offering for sale, selling, or otherwise providing the ’629 CSA Accused Products and components thereof to such third parties; (ii) enabling third parties to assemble, install, and use the products when such use infringes the ’629 patent; (iii) providing technical support, specifications, user guides, manuals, technical information, and instructions for assembling, installing, and operating the ’629 CSA Accused Products in their customary way; (iv) advertising and promoting the ’629 CSA Accused Products through its website and various promotional materials; and/or (v) providing ongoing warranties, support, maintenance, and registration to such third parties relating to the ’629 CSA Accused Products.

77. Upon information and belief, CSA has known that its customers, distributors, and resellers have followed and/or used CSA’s support, instructions, user guides, and technical specifications and have used, offered to sell, or sold the ’629 CSA Accused Products within the United States. CSA directly benefits from and actively and knowingly encourages customers’,

distributors', and resellers' use, sale, and/or offer for sale of products that infringe the '629 patent in the United States.

78. Upon gaining knowledge of the '629 patent, it became apparent to CSA that the manufacture, sale, importing, offer for sale, or use of the '629 CSA Accused Products infringes the '629 patent. On information and belief, CSA will continue to engage in activities constituting inducement of infringement, and with the actual intent to cause the acts that it knows or should know would induce direct infringement and/or willful blindness of a high probability that the activities result in infringement of the '629 patent.

79. CSA's direct infringement and/or inducement to infringe the '629 patent has injured and will continue to injure Slingshot. Slingshot is entitled to recover damages adequate to compensate for such infringement pursuant to 35 U.S.C. § 284.

## FOURTH CAUSE OF ACTION – INFRINGEMENT OF THE '523 PATENT

80. Plaintiff hereby repeats and re-alleges the allegations contained in paragraphs 1 to 22, as if fully set forth herein.

81. Defendant Canon U.S.A., directly and/or through its subsidiaries, affiliates, agents, and/or business partners, has in the past and continues to directly infringe the '523 patent pursuant to 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, by making, having made, using, selling, offering to sell, and/or importing ink cartridges and inkjet printers that embody the inventions claimed in the '523 patent, in particular, at least claims 1–3, 5–7, 10–12, and 14–16, within the United States and within this District. Canon U.S.A. has been and is engaged in one or more of these direct infringing activities related to its inkjet printers and ink cartridges, including at least: (i) BCI-3e, BCI-6, CL-211, CL-211XL, CL-241, CL-241XL, CL-244XL, CL-246, CL-246XL, CL-261, CL-261XL, CLI-36, CLI-65, CLI-221, CLI-226, PG-240, PG-240XL, PG-260,

PG-260XL, PGI-220, and PGI-35 ink cartridges and Maxify and/or Pixma printers utilizing such cartridges; and (ii) any other ink cartridge (or printer utilizing such ink cartridge) that has an internal conduit between the ink ejection end and the cover of the cartridge for permitting air near the exit end to flow through the conduit and to be released to the atmosphere through a vent in the cover (collectively hereinafter "the '523 CUSA Accused Products").

82. Canon U.S.A. sells the '523 CUSA Accused Products to distributors, retailers and/or other customers throughout the United States, and actively markets and supports sales, including through its website. Canon U.S.A. also sells inkjet printers that are compatible with '523 CUSA Accused Products and require '523 CUSA Accused Products to function.

83. Notice of the factual basis of Plaintiff's allegations of infringement by the '523 CUSA Accused Products is provided in the claim charts attached as Exhibit K and Exhibit L. Exhibit K demonstrates how the '523 patent is infringed by reference to the CLI-65, BCI-6, CLI-226, PGI-220, and CLI-221 ink cartridges. Exhibit L demonstrates how the '523 patent is infringed by reference to the CLI-244, CL-211, CL-241, CL-246, CL-261, PGI-35, and CLI-36 ink cartridges. On information and belief, the infringing aspects of each ink cartridge identified in Paragraph 81 are represented by one or more of the cartridges addressed in Exhibits K and L.

84. Canon U.S.A., directly and/or through its subsidiaries, affiliates, agents, and/or business partners, is also indirectly infringing the '523 patent, including at least claims 1–3, 5–7, 10–12, and 14–16, pursuant to 35 U.S.C. § 271(b) by actively inducing acts of direct infringement performed by others. Canon U.S.A.'s customers directly infringe at least by using the '523 Accused Products. Canon U.S.A.'s retail partners, distributors, and resellers directly infringe at least by selling and offering for sale such products.

85. Canon U.S.A. has actual notice of the ’523 patent and the infringement alleged herein at least upon the service of this Complaint. On information and belief, Canon U.S.A. also has lawyers and other active agents who regularly review patents and published patent applications relevant to the technology in the field of the ’523 patent. The timing, circumstances, and extent of Canon U.S.A. obtaining actual knowledge of the ’523 patent prior to commencement of this lawsuit will be confirmed during discovery.

86. Canon U.S.A. indirectly infringes the ’523 patent by inducing third parties, including customers, to use the ’523 CUSA Accused Products in their normal and customary way and for their intended purpose. On information and belief, Canon U.S.A. also induces its authorized distributors and resellers to engage in infringing acts of selling and offering for sale the ’523 CUSA Accused Products. For example, Canon U.S.A. actively induces such third parties, including customers, distributors, and resellers, to infringe the ’523 patent by, among other things: (i) offering for sale, selling, or otherwise providing the ’523 CUSA Accused Products and components thereof to such third parties; (ii) enabling third parties to assemble, install, and use the products when such use infringes the ’523 patent; (iii) providing technical support, specifications, user guides, manuals, technical information, and instructions for assembling, installing, and operating the ’523 CUSA Accused Products in their customary way; (iv) advertising and promoting the ’523 CUSA Accused Products, including assisting purchasers in locating local dealers for specific inkjet printer models, through its website and various promotional materials; and/or (v) providing ongoing warranties, support, maintenance, and registration to such third parties relating to the ’523 CUSA Accused Products.

87. Upon information and belief, Canon U.S.A. has known that its customers, distributors, and resellers have followed and/or used Canon U.S.A.’s support, instructions, user

guides, and technical specifications and have used, offered to sell, or sold the ’523 CUSA Accused Products within the United States. Canon U.S.A. directly benefits from and actively and knowingly encourages customers’, distributors’, and resellers’ use, sale, and/or offer for sale of the ’523 CUSA Accused Products in the United States.

88. Upon gaining knowledge of the ’523 patent, it became apparent to Canon U.S.A. that the manufacture, sale, importing, offer for sale, or use of the ’523 CUSA Accused Products infringes the ’523 patent. On information and belief, Canon U.S.A. will continue to engage in activities constituting inducement of infringement, and with the actual intent to cause the acts that it knows or should know would induce direct infringement and/or willful blindness of a high probability that the activities result in infringement of the ’523 patent.

89. Canon U.S.A.’s direct infringement and/or inducement to infringe the ’523 patent has injured and will continue to injure Slingshot. Slingshot is entitled to recover damages adequate to compensate for such infringement pursuant to 35 U.S.C. § 284.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for:

1. Judgment that the ’951, ’341, ’629, and ’523 patents are each valid and enforceable;

2. Judgment that the ’951, ’341, ’629, and ’523 patents are infringed by Defendants;

3. An award of damages arising out of Defendants’ acts of patent infringement, together with pre-judgment and post-judgment interest;

4. A permanent injunction enjoining Defendants and their officers, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in concert or privity with any of them from infringing or inducing the infringement of any of the

’951, ’341, ’629, and ’523 patents, without additional compensation to Plaintiff in an amount to be determined by the Court;

5. An award of Plaintiff’s attorneys’ fees, costs, and expenses incurred in this action in accordance with 35 U.S.C. § 285; and

6. Such other and further relief as the Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands trial by jury of all issues triable of right by a jury.

Dated: January 7, 2022

HECHT PARTNERS, LLP

/s/David L. Hecht
David L. Hecht
Maxim Price
125 Park Avenue, 25th Floor
New York, NY 10017
Telephone: (212) 851-6821
Dhecht@hechtpartners.com
Mprice@hechtpartners.com

*Counsel for Plaintiff*

OF COUNSEL:

Timothy P. Maloney (*pro hac vice forthcoming*)
Mark A Borsos (*pro hac vice forthcoming*)
David A. Gosse (*pro hac vice forthcoming*)
Jacqueline L. Thompson (*pro hac vice forthcoming*)
Fitch, Even, Tabin & Flannery LLP
120 South LaSalle Street, Suite 2100
Chicago, Illinois 60603
Telephone: (312) 577-7000